**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RUDY GARAFOLA,** | : | **No. 3:07cv2305** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LACKAWANNA COUNTY;** | : | |
| **CORRECTIONAL CARE, INC.;** | : | |
| and **DR. EDWARD ZALOGA,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

_____Before the court for disposition are three motions for summary judgment. The motions were filed by Defendant Dr. Edward Zaloga, Defendant Correctional Care, Inc., and Defendant Lackawanna County. The motions have been fully briefed and are ripe for disposition.

**Background**

On June 6, 2006, a parole violation landed Plaintiff Rudy Garafola in the Lackawanna County Prison. Many years prior, he had been in an automobile accident and suffered injuries to his hip. He had several hip surgeries, including the surgical placement of a partial artificial hip. (Doc. 98, Plaintiff's Counterstatement of Facts ("Pl. SOF") ¶ 8; Doc. 84-5 Defendant Zaloga's Statement of Facts ("Def. SOF") ¶ 8). During a medical intake interview, plaintiff informed the Lackawanna County Prison intake officer of the multiple surgeries on his right hip. (Doc. 98, Pl.SOF ¶ 9, Pl. Ex. C., Pl. Dep. at 63 - 65).[1]

---

[1]Defendant Zaloga strenuously argues that plaintiff did not in fact tell the intake officer of the prior hip problems. (Doc. 84-5, Def. SOF ¶ 9). Plaintiff has presented evidence that he did in fact inform the intake officer.

When he entered Lackawanna County Prison, plaintiff requested a lower bunk assignment, because he did not want to have to jump off an upper bunk due to his history of hip problems.  (Doc. 99-2, Pl. Dep. at 45-46).  The prison failed to respond to his request.  (Id. at 44-45).   He was forced to jump from the bunk to reach the floor of his cell.  In late August 2006, plaintiff broke his greater trochanter bone, a part of his upper thigh bone, by jumping from the upper bunk.  (Id. at 48-49, 119-124).

During the pertinent times, Lackawanna County contracted with Co-Defendant Correctional Care, Inc. ("CCI") to provide healthcare to the inmates at the county prison.  (Doc. 101, Def. Lackawanna County's SOF ¶ 5, and plaintiff's response thereto, Doc. 105, ¶ 5).  Defendant Dr. Edward J. Zaloga is the sole owner, president and chief medical officer of CCI. (Doc. 89, Zaloga SOF ¶ 1, and Pl's response thereto, Doc. 96 ¶ 1).

On August 23, 2006, plaintiff went to the prison "sick call" and told a nurse at the prison that his hip was broken or that the hardware from the previous surgeries was broken or loose.  (Doc. 99-2, Pl. Dep. at 60).  At this time, the prison doctor, Defendant Zaloga did not examine the plaintiff. Rather, he talked to the nurse and authorized plaintiff to receive 600 milligrams of Motrin three times a day.  (Def. Zaloga, Ex. F., Prison Medical Records at 1).  Motrin is a pain relief medication with an active ingredient of Ibuprofen.  It is used to treat minor aches and pains such as headaches and muscle aches.  See Http://www.motrin.com/page.jhtml?id=/motrin/products/1_6_1.inc&sec=ove

---

At this stage of the proceedings, however, the court must examine the facts in the light most favorable to the plaintiff.  Therefore, for purposes of this motion, we proceed on the basis that plaintiff do so inform the prison.

rview

Plaintiff next went to sick call on September 6, 2006.  (Def. Zaloga, Ex. F., Prison Medical Records at  2).  He complained of pain in his hip. Again, he was not seen by a doctor and was prescribed Motrin.  (Id.)  On September 20, 2006, the same outcome occurred when plaintiff sought medical attention.  (Id.)

On October 10, 2006, plaintiff again went to sick call.  He explained that he thought he had broken his hip pin when he jumped off the top bunk a month and a half previously.  (Id.)  Dr. Zaloga examined plaintiff for the first time on this date and noted the possibility of a "damaged/dislodged" right femoral prosthesis.  (Id.)   He ordered an increase in the Motrin and an x-ray.  He further ordered no recreation or work for the plaintiff.  (Id.)

Eventually, Dr. Zaloga ordered that the prison supply plaintiff with a lower bunk.  Defendants indicate that ordering no recreation or work and a lower bunk is "conservative treatment."  Plaintiff argues that this is no treatment at all but a decision to require plaintiff to remain in bed for the remaining nine months of his sentence.  (Doc. 99-2, Pl. Dep. at 73).  Upon his release from jail, plaintiff sought medical treatment, and, as noted above, it was ultimately determined that he had broken his greater trochanter bone.

Based upon these facts, plaintiff instituted the instant action against the defendants.  He asserts the following three claims for relief: 1) 42 U.S.C. § 1983, against Defendant Lackawanna County alleging that its policies and/or customs constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution; 2) 42 U.S.C. § 1983 against Defendants CCI and Zaloga alleging that their actions

constituted cruel and unusual punishment under the Eight Amendment to the United States Constitution and 3) Negligence/Gross Negligence, against Defendants Zaloga and CCI.[2]  At the close of discovery each defendant filed a motion for summary judgment.  These motions are now ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983 for constitutional violations, we  have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

---

[2]Plaintiff has filed a complaint and two amended complaints.  These are the causes of action found in the Second Amended Complaint.

4

examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

As noted above, the defendants filed three separate summary judgment motions. We will address each one in turn.

**I. Dr. Edward Zaloga**

The second amended complaint contains two claims against Defendant Zaloga. First, it asserts that Zaloga exhibited deliberate indifference to plaintiff's serious medical needs which constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (Doc. 57, Second Am. Compl. ¶ 42). The second claim against Zaloga is for medical negligence/gross negligence. (Id. ¶¶ 45 - 49). As part of the damages, plaintiff seeks punitive damages. Zaloga moves

5

for summary judgment on the Eighth Amendment claim, the negligence claim and the punitive damages claim.  We will address each separately.

## 1.  Eighth Amendment claim

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of the United States Constitution by state officials. See 42 U.S.C. § 1983. In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Plaintiff alleges that Defendant Zaloga violated his Eighth Amendment right to be free from cruel and unusual punishment because he failed to treat him for the fractured bone he suffered in prison.  To demonstrate Eighth Amendment cruel and unusual punishment based on the denial of medical care in a prison, a plaintiff must establish that defendants acted "with deliberate indifference to his or her serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.1993).  A prison official's deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment because the government has an "obligation to provide medical care for those whom it is punishing by incarceration." Estelle, 429 U.S. at 103.  A prisoner plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v.

Camden Cnty Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  Defendant Zaloga does not brief the issue of whether plaintiff's hip injury constituted a serious medical need.  The court therefore assumes that defendant concedes for purposes of summary judgment that it was a serious medical need.  Therefore, we must only determine whether defendant's actions indicate deliberate indifference to plaintiff's medical need.[3]

Defendant argues that in analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.  A mere complaint that medical staff have "been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical mistreatment does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.  See also Durmer, 991 F.2d at 69 (inadequate medical treatment resulting from negligence is not a constitutional violation).

Plaintiff agrees that in order to make out a claim, he must establish both a serious medical need and deliberate indifference to that need.  He

---

[3]"A medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth Cnty Corr. Inst. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citation omitted).

asserts, however, that Farmer is not on point.  That case dealt with a

situation where prison official's provided care, but did so in a negligent

manner.  Plaintiff argues that this case is about a denial of medical care

and that the analysis provided in Monmouth Cnty Corr. Inst. Inmates v.

Lanzaro, 834 F.2d 326 (3d Cir. 1987) is more directly on point.  Monmouth

explains as follows:

> Where prison authorities deny reasonable requests
> for medical treatment, however, and such denial
> exposes the inmate "to undue suffering or the threat
> of tangible residual injury," Westlake v. Lucas, 537
> F.2d 857, 860 (6th Cir. 1976) (cited with approval in
> Estelle, 429 U.S. at 105 n. 11, 97 S.Ct. at 291 n.
> 11), deliberate indifference is manifest. Similarly,
> where "knowledge of the need for medical care [is
> accompanied by the] . . . intentional refusal to
> provide that care," Ancata v. Prison Health Servs.,
> 769 F.2d 700, 704 (11th Cir. 1985), the deliberate
> indifference standard has been met. See Robinson
> v. Moreland, 655 F.2d 887, 889-90 (8th Cir. 1981)
> (jury could properly conclude that provision of
> ice-pack for inmate's fractured hand constituted
> deliberate indifference where prison guard knew
> medical care was needed). Short of absolute denial,
> "if necessary medical treatment [i]s . . . delayed for
> non-medical reasons, a case of deliberate
> indifference has been made out." Ancata, 769 F.2d
> at 704; accord Archer v. Dutcher, 733 F.2d 14 (2d
> Cir. 1984) (allegation that emergency medical care
> to pregnant inmate was delayed in order to make
> her suffer states a claim of deliberate indifference
> under Estelle ).

Monmouth, 834 F.2d at 346-7.

We find that a jury could conclude that Defendant Zaloga exhibited

deliberate indifference to the plaintiff's serious medical needs.  Plaintiff

complained over a month and a half regarding the possibility that he had

broken his hip, on which he had had many surgeries in the past.

Defendant Zaloga did not even examine him during that time, but merely

provided him a prescription for a pain reliever via the telephone.   Finally,

Dr. Zaloga recognized that plaintiff may have had a damaged or dislodged

right femoral prosthesis.  (Def. Ex. 2, Medical Records, Doc. 84-7, at 4) .
In response, Dr. Zaloga increased the Motrin.  A nurse suggested another
x-ray would be appropriate, but Dr. Zaloga never ordered one.  The
technician who had performed the first x-ray evidently did not do it properly.
Plaintiff described the x-ray as follows:  "I remember I was down the boiler
room, and they called me to go to the doctors to get an x-ray.  I went to get
an x-ray.  This lady met me in the doctor in the - - in the medical unit, had
me lay down.  And she took x-rays  - - took three x-rays.  I asked her at the
end of the x-rays if the doctor was going to be able to tell if my femur is
loose or something is broken.  And she told me, why didn't you tell me that
to begin with.  I would have - - I believe she said darkened the film - - I'm
pretty sure she said darken the film.  She slammed her - - she slammed
her x-ray machine shut and left."  ( Doc. 99-2, Pl. Ex. C.,Pl. Dep. at 62).

When plaintiff continued to complain, and a nurse suggested an
additional x-ray, Zaloga, instead of ordering the x-ray,  ordered that the
plaintiff perform no work.  As a result of no treatment, or merely being
provided Motrin, plaintiff suffered from the broken greater trochanter bone
from August 23, 2006 through his release in July 2007.  (Doc. 99-3, Pl. Ex.
E., Report of Mark G. Graham, M.D.).

Based upon all this evidence, the jury could conclude that Dr. Zaloga
demonstrated deliberate indifference to plaintiff's serious medical needs.
The jury may conclude under Estelle that Dr. Zaloga knew there was a
need for additional medical care, but intentionally refused to provide that
care.  Plaintiff indicated that he received the following information from
Barbara Fox, the head nurse of CCI: "I was told that I would not get any
treatment because Dr. Zaloga is a cheap bastard; and if he sent me out to

get checked out, he's going to have to send everybody else to get checked out.  That means that would start problems."  (Doc. 99-2, Pl. Ex. C. at 66).  Instead of providing treatment Zaloga suggested that plaintiff rest in bed for the remainder of his time in prison.  (Id. at 73).

In support of his position, Defendant Zaloga cites to Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987).  He cites Boring for the proposition that "[i]nadequate medical claims should be denied where any medical treatment provided by an official does not simply comport to an inmates special requests[.]" We find the Boring holding to be inapplicable to the instant case.

Generally, Boring addresses Eighth Amendment claims such as the plaintiff's.  The central issue in Boring, however, was whether a prisoner plaintiff must produce expert testimony to establish that he suffered from a serious medical need.  Boring, 833 F.2d at 469 ("The principal issue on this appeal is whether former pretrial detainees seeking damages in constitutional claims for lack of medical care must produce expert testimony to establish that their ailments were serious.").  Although, not the main focus of the case, the court did make the statement that plaintiff attributes to it.  One of the conditions that one of the plaintiffs in Boring complained of was a scalp condition for which he requested a specific shampoo.  Id. at 473.  The prison did not provide that shampoo, but rather provided a different one, which the plaintiff found to be less effective than the shampoo he requested.  Id.  The court ruled that the scalp condition was a mere annoyance, not a serious medical need, and that the plaintiff was complaining of the course of treatment, which remains a question of sound professional judgment.  Id.

Plaintiff Garafola did more than complain about a shampoo brand that was provided.  He asserts that he complained about a possibly broken hip for a month and a half before he was even seen by the prison doctor.  Then when the doctor saw him, he did nothing to treat the problem except prescribe Motrin and order him off of work.  Defendant is correct, however, that Boring does call into doubt whether a prisoner plaintiff may have an Eighth Amendment claim where he merely disagrees with the doctors over the proper means of treating plaintiff's condition.  Boring in turn cites to Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).  Pierce does in fact instruct that courts should not attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.  Id. at 762 (internal quotation marks and citations omitted).  The court, however, proceeded to explain as follows:

> Implicit in this deference to prison medical authorities is the assumption that such an informed judgment has, in fact, been made.  When, however, prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment, the constitutional standard of Estelle has been violated.

Id.  The question here is whether an informed judgment was made to actually not treat the plaintiff.

Defendant also relies on the Jetter v. Beard, an unpublished, unprecedential opinion from the Third Circuit Court of Appeals.  130 Fed. Appx. 523 (3d Cir. 2005).  Defendant's position is that Jetter, where the Third Circuit found no Eighth Amendment violation, is very similar to the instant case.  We disagree.  In Jetter, the plaintiff, a state prisoner, complained of partial loss of sensation in his toes, lower legs and lower

back.  Id. at 525.  He requested that the prison doctor refer him to a
neurologist.  Id. Instead, the doctor prescribed Prednisone to the plaintiff.
Id.  Two months later, plaintiff complained of an irregular heartbeat.  A
prison nurse performed an electrocardiograph ("EKG") examination.  A
physician's assistant and specialist in cardiology opined that plaintiff was
suffering from atrial fibrillation.  Id.  The prison doctor prescribed
Coumadin, Tenormin and aspirin and returned plaintiff to his cell.  Id.  The
next day, plaintiff again complained of an irregular heartbeat.  Id.  Two
nurses examined him in his cell.  Id.  The prison doctor refused to refer him
to a neurologist and cardiologist.  He further refused to transfer him to a
hospital.  Id.  The court found that the plaintiff did not establish deliberate
indifference on the part of the prison doctor.  Id. at 526.  "Instead, the
evidence establishes that [plaintiff] received care for his medical
conditions, including evaluations by various medical personnel,
prescriptions for several different medications, and an EKG performed by
medical personnel[.]"  Id.  Plaintiff merely sought a different course of
treatment and referral to other doctors and transfer to the hospital.  Id.

The instant case is different.  Plaintiff asserts that he received no
treatment.  Ultimately, he was prescribed Motrin and bed rest.  He received
an x-ray, but questions surround whether it adequately showed the area in
question.  We find that it will be for a jury to decide whether Defendant
Zaloga prescribing bed rest, a faulty x-ray and a mild pain reliever was
actually treatment of plaintiff's serious medical need.

For the above reasons, Defendant Zaloga's motion for summary
judgment regarding plaintiff's Eighth Amendment claim will be denied.

### 2.  Medical Negligence Claim

Plaintiff's third claim for relief is against Defendant Zaloga for negligence/gross negligence.  (Doc. 57, Second Am. Compl. ¶¶ 45 - 49).[4] Defendant Zaloga asserts that the plaintiff does not possess appropriate expert testimony to establish medical negligence.  We disagree.

> Under Pennsylvania law, to state a prima facie cause of action for a medical malpractice claim, a plaintiff must establish a duty owed by the physician to the patient, a breach of that duty by the physician, that the breach was the proximate cause of the harm suffered and the damages suffered were a direct result of the harm. Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (1990). Further, the plaintiff must also provide a medical expert who will testify as to the elements of duty, breach and causation.

Hightower-Warren v. Silk, 698 A.2d 52, 54 (Pa. 1997).  An exception to the necessity of expert testimony exists "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." Id. at n1.

In support of his position, plaintiff submits the expert report of Mark G. Graham, MD, FACP, Associate Professor of Medicine, Jefferson Medical College, Philadelphia, Pa.  (Doc. 99-3 Pl. Ex. E 29 - 38).  Dr. Graham opines that Defendants Zaloga and CCI deviated from the standard of care owed to plaintiff by "failing to properly evaluate [plaintiff's] injured hip in the autumn of 2006." Id. at 37.  As a result, plaintiff "endured impaired functional capacity, prolonged (almost one year) pain and suffering, and a surgery in October 2007 to address a new fracture." Id. Dr. Graham holds his opinions to a reasonable degree of medical certainty.

---

[4]Defendant Zaloga first argues that we should dismiss the state law claim because we should dismiss the federal claim.  As we have determined it would be inappropriate to dismiss the federal civil rights cause of action, this argument is not convincing.

Id.

Based upon the plaintiff's expert report, we find no merit to the defendant's argument, and we will not grant the summary judgment motion on the medical negligence count.

### 3.  Release

Next, Defendant Zaloga raises the issue of a "release" executed by the defendant.   We find that the "release" does not relieve Defendant Zaloga of liability.

The document at issue states:

"CORRECTION CARE, INC.

Medical Consent/ Refusal Form

Patient's Name <u>Rudy Garfola</u> [sic] Date <u>12-21-06</u>
Social Security No. <u>[]</u>            DOB <u>8-17-50</u>
Intake Date <u>            </u>              Time <u>        </u>
Classification: City <u>      </u> State <u>        </u> Federal <u>      </u>
<u>        </u>

Read Aloud To Patient

<u>        </u> I <u>Rudy Garfola</u> [sic] hereby consent/refuse medical care for the illness or injury as listed below. I also do hereby release the facility physician and the medical staff of responsibility for any detriment to my health due to my refusal/consent to treatment.  Correctional Care will not be accountable for any injury or consequences incurred.
Nature of problem <u>Inmate wants to work regardless of medical advise.</u>
<u>I refuse medical care for the above condition.</u>"
(Doc. 84-13, Def.  Zaloga Ex. 8).

The form is signed by plaintiff and Barbara Fox, CCI's head nurse.

The facts surrounding this form are as follows:

After plaintiff saw Defendant Zaloga for the final time, Zaloga placed him on a restriction that prohibited him from working.  Plaintiff had determined based upon the course of proceedings that Zaloga was

refusing to treat him at all.   Plaintiff had a job with maintenance where he could sit and perform his job without causing additional pain for his hip. Therefore, he sought to continue with his job.  In order to continue with his prison job, the defendants required that he sign the above-quoted form. (Doc. 99-2, Pl. Ex. C., Pl. Dep. at 69 - 73).

By its plain language, the form is not a release for any treatment that plaintiff may have received from Dr. Zaloga or Correctional Care.  It is written to release them from liability if the plaintiff injured himself more by working instead of not working as advised by Dr. Zaloga.  Plaintiff does not allege that he suffered further injury from working his prison job. Therefore, this form has no effect on the liability of Defendant Zaloga. Accordingly, summary judgment based upon the "Medical Consent/ Refusal" form will be denied.

### 4. Punitive Damages

The final issue raised by Defendant Zaloga is punitive damages. Defendant Zaloga seeks judgment on plaintiff's punitive damages claim on the basis that there is no evidence to support an award of such damages. We disagree.

The United States Supreme Court has explained the standard for punitive damages in a civil rights case as follows: "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  When examined in the light most favorable to the plaintiff punitive damages could be awarded in the instant case.  Plaintiff suffered a bone fracture in the

area of his hip.  Defendant Zaloga did not examine him for a month and a half, and then prescribed Motrin and bed rest instead of an appropriate treatment.  A jury could conclude that Defendant Zaloga exhibited reckless or callous indifference to plaintiff's rights.

## II. Correctional Care, Inc.

Defendant Correctional Care, Inc., ("CCI"), filed the next motion for summary judgment.  CCI raises four issues that we will address in turn.

### 1.  Substantive Due Process/ Fourteenth Amendment

Plaintiff's First Amended Complaint included a cause of action for Due Process under the Fourteenth Amendment.  Defendant CCI filed a motion to dismiss that claim.  Plaintiff agreed to the dismissal of the cause of action.  Thus, the court granted the motion to dismiss the Fourteenth Amendment Due Process cause of action.  (Doc. 55, Memorandum and Order of Court dated Nov. 6, 2008, at 5 - 6).

After the dismissal of the cause of action, the plaintiff filed a Second Amended Complaint, which is the complaint currently before the court.  This complaint, also contains a Fourteenth Amendment Due Process claim.  (Doc. 57, Second Am. Compl. ¶ 42).  Defendant CCI moves for summary judgment on the Fourteenth Amendment Due Process claim, which it construes as a substantive due process claim.  Generally, plaintiff does not disagree with granting summary judgment on a Fourteenth Amendment substantive due process claim.  To be precise, plaintiff argues that the Second Amended Complaint contains no substantive due process claim.  Plaintiff asserts that Fourteenth Amendment Due Process is invoked only to the extent necessary to make the Eighth Amendment

applicable to state action.[5]   Thus, judgment will be granted to Defendant CCI to the extent that the Second Amended Complaint can be read to plead a substantive due process claim.  To the extent that the Fourteenth Amendment is cited merely because it incorporates the Eighth Amendment right to be free from cruel and unusual punishment, it will remain in the case.

### 2.  Respondeat Superior Liability

In our order on the defendant's motion to dismiss in this case, we ruled that CCI could not be held vicariously liable for a violation of the plaintiff's civil rights.  (Doc. 55, Memorandum and Order of Nov. 6, 2008, 3 - 4).  We explained that when suing a municipality for a civil rights violation under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978), a plaintiff cannot rely on respondeat superior liability.  Rather, in order to hold a municipality liable, a plaintiff must establish that the violation was caused by the municipality's policy or custom.  Id. at 694. Defendant CCI is a private corporation, not a municipality.  It does, however, contract with a municipality to provide services to the public.  In the court's motion to dismiss opinion, we agreed with the reasoning of the great weight of authority that extends Monell to private corporations that contract with municipalities.  (Doc. 55, Memorandum and Order of Nov. 6, 2008, 3 - 4).  Accordingly, for plaintiff to establish CCI's liability for a constitutional violation, he must demonstrate that the constitutional violation was caused by CCI's policy or custom.

---

[5]The Second Amended Complaint reads: "[S]uch deliberate indifference constituted a deprivation of the plaintiff's Due Process rights under the Fourteenth Amendment to the United States Constitution."  (Doc. 57, Second Am. Compl. ¶ 42).

CCI argues that plaintiff offers no evidence that CCI has any policy or custom that caused the alleged constitutional violation, that is, no evidence of a policy, custom or practice.   We disagree.

The law provides that a custom or practice for <u>Monell</u> liability may be demonstrated where a decision-maker issues an official proclamation or decision.  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).   In the absence of such an official proclamation:

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." <u>Bryan County</u>, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " <u>Id.</u> at 417-18, 117 S.Ct. 1382 (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); see also <u>Berg</u>, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

<u>Natale v. Camden Cnty Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (footnote omitted)

In this case, Defendant Zaloga is the sole owner, highest ranking official, chief medical officer and corporate designee of Defendant CCI.  In effect he is the policymaker with regard to medical care at the prison.  He

is the one who made the decisions at issue with regard to the plaintiff. As stated in <u>Natale</u>, liability may be found where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." <u>Id.</u> Here, Zaloga, the policymaker, made the decisions at issue with regard to the plaintiff. Therefore, CCI may also be held liable.

### 3. Punitive Damages

Defendant CCI next argues that it cannot be held liable for punitive damages. It argues that municipalities cannot be held liable for punitive damages. In the instant case, defendant argues that could be held liable on the basis of its contract with the municipality. Therefore, punitive damages are not available.

Plaintiff, on the other hand, argues that CCI is in fact a corporation and no law holds that punitive damages are unavailable against a corporation. After a careful review, we agree with plaintiff.

<u>Segler v. Clark Cnty</u>, a case from the District of Nevada is directly on point. 142 F. Supp. 2d 1264 (D. Nev. 2001). In <u>Segler</u>, a former inmate sued for constitutional violations with regard to medical care received while he was incarcerated in a detention center. <u>Id.</u> at 1266-67. The entity that provided the medical care was a private corporation with a contract with the city police department. <u>Id.</u> at 1268. The existence of the contract rendered the private corporation a state actor for purposes of section 1983. <u>Id.</u> at 1269. Nonetheless, despite its contract with a municipal entity and its potential liability under section 1983, the court found that it could be held liable for punitive damages. <u>Id.</u> We agree with the analysis set forth in <u>Segler</u> which reviewed the underlying reasoning why the Supreme Court has held that punitive damages are not available against a municipality.

The United States Supreme Court found that municipalities are not liable for punitive damages in the case of <u>City of Newport v. Fact Concerts</u>, 453 U.S. 245 (1981).  The court explained that punitive damages are intended to "punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." <u>Id.</u> at 267.  Instead of punishing the tortfeasor, awarding punitive damages against a municipality only punishes the taxpayer. <u>Id.</u> "A municipality . . . can have no malice independent of the malice of its officials.  Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself." <u>Id.</u> (emphasis in original).   To the extent that punitive damages are to seek retribution, the award of punitive damages against a municipality is thus "not significantly advanced, if it is advanced at all." <u>Id.</u> at 268.  Punitive damages are also meant to deter future conduct.  <u>Id.</u>   This goal is not served by the imposition of punitive damages either because ultimately the taxpayer pays the damages, not the individual wrongdoer.  <u>Id.</u>  Accordingly, the court found that punitive damages are not available against municipalities.

The Court's reasoning is not applicable to corporations that are state actors because they contract with a municipality.  The taxpayers do not pay the damages, and the imposition of such damages may affect the corporation's actions in the future.  <u>See</u> <u>Segler</u>, <u>supra</u>.  Accordingly, we will not grant judgment to CCI on the punitive damages claim.

**4. Release**

Defendant CCI also raises the issue of the "release" signed by plaintiff.  For the reasons set forth above with regard to Defendant Zaloga, this portion of CCI's motion for summary judgment will be denied.

### III.  Lackawanna County

Defendant Lackawanna County ("Lackawanna") filed the third and final motion for summary judgment.  This motion raises three issues that we will address separately.

### 1.  Municipal Liability - Eighth Amendment

Defendant Lackawanna County (hereinafter "Lackawanna") first argues that to be held liable as a municipality under section 1983, the plaintiff must establish that the civil rights violation was caused by its policy or custom.  Defendant Lackawanna argues that no policy or custom has been established here.

As noted above, a municipality can be held liable for a constitutional violation where the violation is caused by the municipality's policy or custom.  Here, plaintiff alleges that Lackawanna County's policy of not assigning lower bunks to those who need them led to plaintiff breaking his greater trochanter bone.  Even after breaking the bone and not properly being treated for it, plaintiff was still assigned an upper bunk.  Plaintiff asserts that Lackawanna County's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.   Plaintiff alleges that the prison had a policy of not granting lower bunks to those who requested and needed them.  It was this policy that caused plaintiff's injury, therefore, it can be held liable.  After a review of the plaintiff's evidence, we agree.

When he entered the prison in June 2006, plaintiff requested a lower bunk because of his previously injured hip.  (Doc. 99-2, Pl. Dep. 44-45).  He was not assigned a lower bunk and complained to prison officials.  (Id. 51-52).  The defendant had no policy with respect to bunk assignment was and no process for the assignment of specific bunks.  (Doc. 99 - 1, Def.

21

Lack. Cnty Dep. 38 - 39) (indicating no process for such specific assignment unless ordered by medical).  The decision as to whether to assign an upper or lower bunk is left to the discretion of the intake officer, who is provided no training in this task.  (Doc. 99 - 2, Def. Lack. Cnty Dep. at 53 - 55).  Defendant Lackawanna's policy is to not honor requests for lower bunks and to not consider information provided by the inmate with regard to the need for a lower bunk.  (Id. at 55 - 59). Pursuant to this policy or custom, Defendant Lackawanna assigned plaintiff an upper bunk.  The assignment of the upper bunk led to his broken bone.  According to plaintiff's expert medical witness: "To a reasonable degree of medical certainty, the fracture occurred on or about August 2006 when [plaintiff's] appropriate request for a bottom bunk bed was not honored during his June 21, 2006 intake evaluation." (Doc. 99-3, Pl. Ex. E, Graham Report at 8).

Based upon this evidence, which we view in the light most favorable to the plaintiff, we find that a policy or custom has been alleged that led to the plaintiff's constitutional violation.  Defendant Lackawanna's motion on this point will thus be denied.

### 2.  Due Process Liability

Next, Defendant Lackawanna addresses Due Process liability.  As set forth above, the plaintiff does not pursue a Due Process claim. Therefore, the motion for summary judgment will be granted to the extent that the Second Amended Complaint can be read to assert a Due Process claim.

### 3.  Exhaustion of Administrative Remedies

The final argument raised by Defendant Lackawanna is that the defendant failed to exhaust his administrative remedies, therefore, his

claims are precluded.

The Prison Litigation Reform Act ("PLRA") provides that a cause of action by a prisoner regarding prison conditions cannot be brought unless that prisoner exhausts whatever administrative remedies as are available. 42 U.S.C. § 1997(e)(a).  Defendant Lackawanna asserts that plaintiff never pursued any administrative remedies, therefore his claims are barred.  We disagree.

The PLRA and its exhaustion requirements applies to cases brought "by a prisoner."  Id.   It is uncontested that at the time that this case was filed, the plaintiff was no longer a prisoner.  Accordingly, he did not have to comply with the exhaustion requirement of the PLRA.  Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002) (explaining that a former prisoner is not precluded by the PLRA from bringing suit regarding prison conditions that occurred prior to his release). Defendant Lackawanna's motion for summary judgment based upon exhaustion of administrative remedies will be denied.

**Conclusion**

For the reasons set forth above, the motions for summary judgment will be granted to the extent that the Second Amended Complaint can be read to assert a substantive due process claim.  The motions will be denied in all other respects.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RUDY GARAFOLA,** | :    **No. 3:07cv2305** |
|             **Plaintiff** | : |
| | :    **(Judge Munley)** |
|    **v.** | : |
| | : |
| **LACKAWANNA COUNTY;** | : |
| **CORRECTIONAL CARE, INC.;** | : |
| **and DR. EDWARD ZALOGA,** | : |
|             **Defendants** | : |

## ORDER

_____**AND NOW**, to wit, this 31st day of March 2011, the defendants'
motions for summary judgment (Doc. 84, Doc. 85 & Doc. 87) are hereby
**GRANTED** to the extent that the Second Amended Complaint can be
construed to assert a Substantive Due Process Claim and **DENIED** in all
other respects.

                                 **BY THE COURT:**

                                 **s/ James M. Munley**
                                 **JUDGE JAMES M. MUNLEY**
                                 **United States District Court**